<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                            :
A.D. WALKER and CASSIE WALKER,              :
                                            :
          Plaintiffs,                       :
                                            :          Civil Action No. 08-6037 (JAG)
          v.                                :
                                            :                  **OPINION**
FEDERAL DEPOSIT INSURANCE                   :
CORPORATION, as receiver of                 :
Washington Mutual Bank, et al.,             :
                                            :
          Defendants.                       :
_____:


<u>GREENAWAY, JR., U.S.D.J.</u>

   This matter comes before this Court on the motion by defendant, Federal Deposit

Insurance Corporation ("the FDIC"), as receiver for Washington Mutual Bank, for summary

judgment, pursuant to Federal Rule of Civil Procedure 56(c), against plaintiffs, A.D. Walker and

Cassie Walker ("Plaintiffs").  For the reasons set forth below, the motion shall be granted.

   At issue in the present motion is the propriety of federal subject matter jurisdiction over

claims Plaintiffs aim to assert in pending "pre-receivership" litigation against a failed institution,

where Plaintiffs did not comply with the claims procedure in a timely manner, under the

Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") of 1989, Pub. L. No.

101-73, 103 Stat. 183 (1989) (codified in part in 12 U.S.C. § 1821(d)).[1]

_____

   [1] Congress passed FIRREA in response to the 1980s savings and loan crisis.  FIRREA
establishes a comprehensive administrative claims review process for all claimants to the assets

**BACKGROUND**

Plaintiffs filed a second amended complaint on October 10, 2007 in Superior Court of New Jersey, Law Division, Essex County.[2]  (Notice of Removal Ex. A ¶¶ 1-8.)[3]  On September 25, 2008, the Office of Thrift Supervision ("the OTS") declared Washington Mutual ("WaMu"), a financial institution, insolvent, and appointed the FDIC as WaMu's receiver.  (FDIC Rule 56.1 Statement of Undisputed Material Facts ("FDIC R. 56.1 Statement") ¶ 1.)  On the same date, the FDIC accepted the appointment as receiver.[4]  (Id.)  On November 21, 2008, the Superior Court granted the FDIC's motion requesting to be substituted for WaMu, as a party defendant in this action.  (See Notice of Removal ¶ 5.)

On December 10, 2008, the FDIC filed a Notice of Removal to this Court, pursuant to 28 U.S.C. § 1441 and 12 U.S.C. § 1819(b)(2)(B),[5] and indicated the FDIC's intention to subsequently request a ninety day stay of this matter, pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii).

---

of failed depository institutions.  For general examinations of FIRREA's administrative claims review process, see Praxis Properties v. Colonial Sav. Bank, 947 F.2d 49, 62-63 (3d Cir. 1991), and Marquis v. FDIC, 965 F.2d 1148, 1151-1154 (1st Cir. 1992).

[2]  Because the exhaustion of administrative remedies is the only issue the FDIC raises in the motion for summary judgment, this Opinion addresses only those events relevant to exhaustion.

[3]  Plaintiffs assert claims against WaMu for allegedly failing to conduct due diligence on loan documents prior to approving a mortgage refinancing transaction involving Plaintiffs' home.  Plaintiffs also aver fraud and legal malpractice claims against other defendants for allegedly soliciting Plaintiffs to refinance the mortgage on their home and falsifying documents submitted to WaMu.  (Notice of Removal Ex. A.)

[4]  The parties do not dispute that WaMu is a failed depository institution under FIRREA.

[5]  All references to statutory provisions in this Opinion refer to title 12 of the United States Code, unless otherwise indicated.

2

(Id. ¶¶ 6, 7.)  On December 12, 2008, Plaintiffs submitted a letter brief in opposition, requesting remand on the basis that removal of state claims is improper, and that a stay would cause unnecessary delay of this action.  (Docket Entry No. 9.)  On December 15, 2008, the FDIC filed a notice of motion for issuance of a ninety day stay.  (Docket Entry No. 3.)

On December 22, 2008, this Court dismissed the motion to stay, without prejudice, because the FDIC had not requested leave of court, under Appendix 2 of the Local Civil Rules, prior to filing the motion.  (Docket Entry No. 8.)  On March 27, 2009, Magistrate Judge Arleo issued a report and recommendation ("the Report"), recommending that this Court deny Plaintiffs' motion for remand.  (Docket Entry No. 18.)  On April 13, 2009, before this Court adopted the Report, the FDIC filed the instant motion to dismiss, instead of re-filing the motion for a stay, since, in the interim, Plaintiffs had failed to file a timely proof of claim,[6] and thus, according to the FDIC, failed to exhaust the FIRREA's administrative claims review process.[7] (Docket Entry Nos. 19, 20.)

The FDIC avers that Plaintiffs' failure to exhaust the claims procedure implicates the jurisdictional bar, precluding continuation of judicial proceedings against the receiver.  The FDIC asserts that the provision, under FIRREA, for disallowance of untimely filed claims, § 1821(d)(5)(C), divests this Court of subject matter jurisdiction over Plaintiffs' claims against the FDIC.  The FDIC argues that Plaintiffs fail to make an adequate showing, pursuant to the

---

[6]  Neither party submitted objections, and this Court adopted Magistrate Judge Arleo's Report.  (Docket Entry No. 25.)

[7]  A proof of claim, under the FIRRREA's claims process, will identify the claimant and the nature of the claim, and provide documentation supporting the claimant's professed right to relief against the failed depository institution.

3

statutory exception to FIRREA's jurisdictional bar, § 1821(d)(5)(C)(ii), because Plaintiffs had, at least, inquiry notice of the FDIC's appointment as receiver.  The FDIC further argues that Plaintiffs can establish no other basis for excusing exhaustion or waiver.  This Court agrees. Plaintiffs are not excused from the claims procedure, and the FDIC's motion for summary judgment, on the basis that Plaintiffs failed to exhaust FIRREA's claims procedure, is granted.

## FIRREA CLAIMS PROCEDURE

Title 12 U.S.C. §§ 1821(d)(3)-(13) sets forth the procedure, under FIRREA, for asserting claims against failed financial institutions.  The claims procedure authorizes the FDIC to "determine," id. § 1821(d)(3), and "allow," and "disallow" claims, id. §§ 1821(d)(5)(B), (C)(i), (D).

### Filing a Proof of Claim & FIRREA's Statutory Exception

The FDIC has authority to make a final determination disallowing an untimely filed claim under 12 U.S.C. § 1821(d)(5)(C), unless the statutory exception applies.  Section 1821(d)(5)(C) provides as follows:

(5) Procedures for determination of claims.

(C) Disallowance of claims filed **after** end of filing period.

(i) In general.  Except as provided in clause (ii), claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and **such disallowance shall be final**.

If certain prerequisites are met, section 1821(d)(5)(C)(ii) provides a statutory exception, permitting a claimant to pursue claims filed after the claims bar date:

(ii) **Certain exceptions**.  Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if–

4

(I) the claimant did not receive notice of the appointment of the receiver in time to
file such claim before such date; and
(II) such claim is filed in time to permit payment of such claim.

12 U.S.C. § 1821(d)(5)(c) (emphasis added).

### Publishing & Mailing Notice to Claimants

As a corollary to FIRREA's exhaustion requirement for claimants, FIRREA sets forth

notice requirements for the FDIC.  While the rules complement one another, courts have not

construed the FDIC's obligation to give notice to claimants as a prerequisite to a claimant's

compliance with FIRREA's mandatory claims process.

Pursuant to 12 U.S.C. § 1821(d)(3)(B)(i), the FDIC must publish notice of the

receivership, and explain the process for filing a proof of claim.  The FDIC published notice in

several newspapers including, The Wall Street Journal and The Seattle Times.  (FDIC R. 56.1

Statement ¶ 3.)  The notice indicated that creditors' proofs of claim against WaMu must be

submitted to the FDIC administrative claims process by December 30, 2008.  (Id.)  Pursuant to

section 1821(d)(3)(B)(ii), the FDIC republished notice in The Wall Street Journal on October 1,

2008 and October 31, 2008.  (Id.)

Section 1821(d)(3)(C)(i) requires that the FDIC mail a similar notice to creditors listed on

the institution's books at the time of the notice's publication or within thirty days upon discovery

of a claimant whose address does not appear in the books.  12 U.S.C. § 1821(d)(3)(C)(ii).

On or about December 6, 2008, the FDIC mailed a letter, captioned "Notice to

Creditor–Proof of Claim" ("December 6, 2008 Notice"), to Plaintiffs' counsel's law office.

(FDIC R. 56.1 Statement ¶ 4; see Affidavit of Harlin Chunn (Claims Agent for the FDIC)

("Chunn Aff.") ¶ 6 Ex. B December 6, 2008 Notice.)  The December 6, 2008 Notice includes the

5

following information: (1) the OTS closed WaMu; (2) the FDIC accepted its appointment as receiver for WaMu; and (3) the deadline, or "bar date" for the filing of a claim against WaMu is December 30, 2008 ("the claims bar date").  The notice provides that in order to comply with the administrative claims review process:

> You must present the properly completed Proof of Claim form and the supporting documentation to the Receiver on or before the claims bar date referenced in the above subject caption.  If you do not file your claim on or before the claims bar date, the Receiver will disallow your claim.

(Chunn Aff. Ex. B.)

### Plaintiffs' Proof of Claim

Plaintiffs did not submit a proof of claim to the FDIC by the December 30, 2008 claims bar date.  (FDIC R. 56.1 Statement ¶ 5.)  On March 30, 2009, three months after the claims bar date passed, Plaintiffs submitted a proof of claim.  (Id. ¶ 6; Chunn Aff. Ex. C Proof of Claim.)  In their proof of claim, Plaintiffs submitted documentation purporting to support Plaintiffs' substantive claims against the defendants in this action, and asserted the basis for Plaintiffs' claims against WaMu.  (Certification of Alison Galer, Esq. dated October 2, 2009 Ex. B cover letter accompanying Proof of Claim.)  Plaintiffs also included a sentence, in a sparsely worded cover letter to the proof of claim, requesting permission to file after the claims bar date had passed.  (Id.)

The text of the cover letter is reproduced below:

> Enclosed please find Proof of Claim on behalf of Cassie and A.D. Walker.

> We are submitting this claim late because we did not receive notice from the FDIC.  **The only notice that we received was a faxed copy of the FDIC's letter which we received on March 25, 2009 from the attorney for the FDIC in this litigation.**

We would urge you to consider this late claim of Mr. & Mrs. Walker.

(Id. (emphasis in original).)

In opposition to the FDIC's motion, Plaintiffs have not submitted a responsive statement of material undisputed facts, pursuant to Local Civil Rule 56.1, and do not expressly dispute whether the FDIC sent the December 6, 2008 Notice.  This Court observes that, as discussed more fully below, Plaintiffs and Plaintiffs' counsel claim that they did not receive the December 6, 2008 Notice until it was faxed to Plaintiffs' counsel in March 2009 by the FDIC's counsel in the instant case, and that they were not aware of the receivership.  (Certification of Plaintiffs' counsel, Lessie Hill dated April 29, 2009 (Docket Entry No. 22-8) ("I did not receive a Notice of Claim from the FDIC, nor did I know that WaMu had been acquired by the FDIC.")); (Certification of Plaintiff Cassie Walker dated May 1, 2009 (Docket Entry No. 23) ¶¶ 1-3 ("We never received notice of [WaMu] being acquired by the FDIC"; "We have never read the Wall Street Journal or the Washington Post"; and "A proof of claim was prepared by our attorney when she received notice from the FDIC's attorney during March 2009.").)

### Disallowance of Plaintiffs' Claims against WaMu

Following receipt of Plaintiffs' submission, the FDIC disallowed Plaintiffs' claim.  The FDIC sent to Plaintiffs two notices explaining the FDIC's basis for the disallowance.  (Letter from the FDIC to Plaintiffs dated September 18, 2009 attached to Certification of Lessie Hill, Esq. dated October 7, 2009); (Supplemental Certification of Alison Graler, Esq. dated October 2, 2009 Ex. A Letter from the FDIC to Plaintiffs dated September 29, 2009.)  In the two notices, sent approximately ten days apart, the FDIC invoked two different provisions of FIRREA.  (See id.)  According to Plaintiffs, the notices appeared to present Plaintiffs with two very different

options.  Plaintiffs insist that the first notice permitted Plaintiffs to continue their action in a judicial forum, and that the second notice purported to perpetually bar Plaintiffs from pursuing their claim against WaMu in any judicial proceeding.

Plaintiffs endeavor to allege facts placing them within the purview of the statutory exception for claimants who can demonstrate a lack notice regarding the receivership.  If Plaintiffs could establish that they were without even inquiry notice of the fact that the FDIC is the receiver for WaMu, Plaintiffs' claim against WaMu would fall within the statutory exception to the permanent disallowance of untimely filed proofs of claim.  There is no doubt that Plaintiffs are unable to satisfy the statutory exception under FIRREA.

Plaintiffs attempt to focus this Court's attention on the FDIC's rationale for disallowing Plaintiffs' claims and Plaintiffs' claimed lack of knowledge of the claims bar date.  In the absence of additional facts pertaining to the FDIC's purported misconduct causing Plaintiffs' untimeliness or prejudice to Plaintiffs based on the ten day delay prior to notice of the disallowance for untimeliness, this Court concludes that Plaintiffs' failure to exhaust claims against the FDIC presents a jurisdictional bar to this Court's exercise of jurisdiction over those claims.[8]

Under the circumstances presented here, this Court can find no basis for excusing the exhaustion of administrative claims, pursuant to FIRREA's review process.  Therefore, judgment in the FDIC's favor is warranted.

---

[8] This finding is independent of any professed rationale that the FDIC may have provided in the disallowance notices sent to Plaintiffs.

**STANDARD OF REVIEW**

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v.

Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for

summary judgment cannot rest on mere allegations and instead must present actual evidence that

creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer,

Inc. v. Carrier Exp. Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . .

and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation,

912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to

"set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has

created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to

find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

"Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Celotex, 477 U.S. at 322-23.

## DISCUSSION

### Jurisdictional Bar for Failure to Exhaust

The United States Court of Appeals for the Third Circuit has explained that "FIRREA

expressly limits a claimant's ability to circumvent the [ ] administrative claims procedure,

providing for a strict limitation on judicial review.  . . . [and] thus vests [the FDIC] with primary

jurisdiction, in most circumstances, to determine a claim against a failed financial institution

before judicial intervention."  Praxis Properties v. Colonial Sav. Bank, 947 F.2d 49, 62-63 (3d

Cir. 1991).  A district court lacks jurisdiction over claims brought against the FDIC, unless the

jurisdictional bar under FIRREA is inapplicable.[9]  See Rosa v. RTC, 938 F.2d 383, 392 (3d Cir.

1991), cert. denied, 502 U.S. 981 (1991).

"Courts have afforded [FIRREA's] jurisdictional bar broad application to all manner of

claims and actions seeking a determination of rights with respect to the assets of failed banks,

whether those claims and actions are by debtors, creditors or others."  Centennial Assoc. Ltd.

Partnership v. FDIC, 927 F. Supp. 806, 811 (D.N.J. 1996) (internal quotation marks omitted)

(citing Rosa, 938 F.2d 383).

"The primary purpose underlying FIRREA's exhaustion scheme is to allow [the FDIC] to

perform its statutory function of promptly determining claims so as to quickly and efficiently

resolve claims against a failed institution without resorting to litigation."  See Rosa, 938 F.2d at

396 (citing H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418-19, reprinted in 1989 U.S. Code

Cong. & Admin. News 86, 214-15).  "Congress expressly withdrew jurisdiction from all courts

over any claim to a failed bank's assets that are made outside the procedure set forth in section

_____

[9] Courts have construed FIRREA to impose an exhaustion requirement that serves as a jurisdictional bar to claimants seeking assets from a failed depository institution.  Court have relied on both 12 U.S.C. § 1821(d)(6)(B) and 12 U.S.C. § 1821(d)(13)(D) to examine exhaustion issues.
    In the Third Circuit, courts have construed FIRREA's jurisdictional bar under 12 U.S.C. § 1821(d)(13)(D).  See National Union Fire Ins. Co. of Pittsburgh, PA. v. City Savings, F.S.B., 28 F.3d 376, 383 (3d Cir. 1994); Rosa, 938 F.2d at 391-92.  Other circuits have construed a jurisdictional bar under 12 U.S.C. § 1821(d)(6).  See Bueford v. RTC, 991 F.2d 481, 484-85 (8th Cir. 1993) (listing cases) ("[Under Section 1821(d)(6)(B)] a claim which has not been presented to the RTC by the end of the statutory period shall be disallowed, and no further appeal will be possible.").  To the extent that the decisions this Court relies on herein refer to either, or both, sections, we agree with the Eighth Circuit in Bueford that "either of these subsections can provide a basis for a jurisdictional bar, and we rely on both subsections in our decision."  Id. at 484.

1821." <u>FDIC v. Shain, Schaffer & Rafanello</u>, 944 F.2d 129, 132 (3d Cir. 1991) (citing 12 U.S.C.

§§ 1821(d)(6) and 1821(d)(13)(D)).

<strong>Exhaustion & Pending Litigation</strong>

While the Third Circuit has not spoken expressly on whether FIRREA's exhaustion

requirement under either jurisdictional bar applies to pre-receivership suits,[10] the bar against

presenting untimely claims under section 1821(d)(6)(B) specifically applies to "an action

commenced *before* the appointment of the receiver."[11]  12 U.S.C. § 1821(d)(6)(B)(ii) (emphasis

---

[10]  Although Plaintiffs have not disputed whether exhaustion is required, this Court, as a threshold matter, must address whether FIRREA's exhaustion requirement applies to Plaintiffs' pre-receivership suit.

[11]  Lower courts in the Third Circuit look to <u>Rosa v. RTC</u> for guidance on this question. This issue of exhaustion of pre-receivership claims in pending litigation, however, was not placed squarely before the court in <u>Rosa</u>.  <u>See</u> <u>Rosa</u> 938 F.2d 383.  There, plaintiffs brought claims against the RTC based on <u>postreceivership</u> conduct and initiated litigation <u>after</u> the depository institution entered receivership.  <u>Id.</u> at 392 (emphasis added).
    District courts have extracted diametric guidance from <u>Rosa</u>.  In <u>Radian Ins., Inc. v. Deutsche Bank Nat. Trust Co.</u>, No. 08-2993, 2009 WL 3163557 (E.D. Pa., Oct. 1, 2009), the Eastern District of Pennsylvania examined such disparate holdings, based on readings of <u>Rosa</u>, in later district court cases.  There, the court stated that:

> The holding in <u>Rosa</u> has since been interpreted differently by courts in this district with respect to whether exhaustion of claims filed pre-receivership is still required if § 1821(d)(13)(D) does not apply to those claims.  <u>Compare</u> <u>Spring Garden Assoc. v. RTC</u>, 860 F. Supp. 1070, 1072 (E.D. Pa. 1994) (Bartle, J.) (noting "<u>Rosa</u> teaches that where a lawsuit was pending in any court against a savings bank before an RTC receivership, the jurisdictional bar of § 1821(d)(13)(D) does not apply," and therefore where the plaintiff filed suit prior to receivership, plaintiff "need not present its claim administratively before pursuing its claims in this forum") with <u>RTC v. Kolea</u>, 866 F. Supp. 197, 201 (E.D. Pa. 1994) (Pollak, J.) (finding that <u>Rosa</u> only answers the question of whether a peremptory dismissal is required of suits initiated pre-receivership but does not preclude a court from requiring that such claims be subjected to the administrative exhaustion requirements).  <u>See also</u> <u>Marquis</u>, 965 F.2d at 1157 (filing suit pre-receivership does not excuse compliance with the claims procedure).

12

added); See Bueford, 991 F.2d at 484 ("This language clearly indicates that FIRREA is to be applied to [a] pending action.") (citing Marquis, 965 F.2d at 1148).

This Court surmises further that Congress's purpose in enacting FIRREA would appear to be undermined if claimants were able to circumscribe the exhaustion scheme but for the sheer fortuity that a claimant filed suit prior to the appointment of the receiver.  This Court is divested of subject matter jurisdiction over a pre-receivership suit, against the FDIC, as receiver of a failed banking institution, until, or unless, a claimant complies with, or is excused from, FIRREA's claims procedure.

Having disposed of this threshold issue, this Court turns to Plaintiffs' contention that the factual circumstances in this case demand an exception to the jurisdictional bar for untimely proofs of claims under FIRREA's exhaustion requirement.  The statutory exception for untimely filing, under 1821(d)(5)(C)(ii), is available for a claimant that lacks notice with respect to the receivership and has filed a proof of claim in time to permit payment of such claim.

At the start, this Court must resolve the core question—whether there is an issue of fact regarding Plaintiffs' knowledge of the receivership.  Next, this Court shall address Plaintiffs' first alternative excuse for failure to exhaust their claim under the claims procedure.  This Court considers whether the FDIC may be precluded from invoking one rationale for disallowance under the FIRREA after previously invoking a seemingly alternate basis for disallowance. Plaintiff contends that a genuine issue of material fact exists because the FDIC sent notices to

_____

Id. at *11.

This Court agrees with the analysis of Rosa in Kolea, and with the overwhelming weight of authority from other circuits, including the First Circuit in Marquis, applying FIRREA exhaustion requirements to pre-receivership suits.

13

Plaintiffs indicating purportedly contradictory reasons for disallowing Plaintiffs' admittedly untimely filed proof of claim.  Lastly, this Court shall briefly discuss Plaintiffs' second alternative excuse for failure to exhaust—the assertion that Plaintiffs were unaware of the claims bar date due to the FDIC's allegedly defective notice.

### FIRREA Statutory Exception

Plaintiffs are unable to meet the first prong of the two-part test for FIRREA's statutory exhaustion exception because, even after viewing the evidence in a light more favorable to Plaintiffs, their involvement in motion practice for the pending litigation undermines Plaintiffs' claimed lack of notice of the receivership.

Section 1821(d)(5)(C)(ii) authorizes the FDIC to review claims filed after the claims bar date if "(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and (II) such claim is filed in time to permit payment of such claim."  12 U.S.C. § 1821(d)(5)(C).

Plaintiffs rely on their certifications in opposition to the motion, having not submitted a memorandum of law contesting the FDIC's interpretation of the relevant case law and statutory construction regarding the statutory exception under 12 U.S.C.§§ 1821(d)(5)(C)(ii).  Plaintiffs and Plaintiffs' counsel unequivocally aver that Plaintiffs were not aware that the FDIC "acquired" WaMu.  (Certification of Lessie Hill dated April 29, 2009 (Docket Entry No. 22-8)); (Certification of Plaintiff Cassie Walker dated May 1, 2009 (Docket Entry No. 23) ¶¶ 1-3).) Plaintiffs submit that news media gave Plaintiffs the impression that JP Morgan acquired WaMu.

Plaintiffs incorrectly equate "knowledge and awareness" with "notice."  The FDIC correctly submits that Plaintiffs may not disclaim notice of the receivership where Plaintiffs

14

opposed the FDIC's motion for removal as receiver for WaMu prior to the claims bar date.  (See Certification of Allison Galer dated May 11, 2009 Ex. B Plaintiffs' opposition to the FDIC's motion to substitute WaMu, dated November 21, 2008 (including as additional exhibits, documents evidencing the receivership, filed in this action, prior to the claims bar date) (Docket Entry No. 24-1).)  Plaintiffs fail to rebut Defendants' evidentiary submission with credible evidence indicating their lack of knowledge of the receivership.  A reasonable juror could not find that Plaintiffs lacked knowledge of the receivership.

This Court need not reach the second prong, whether there is adequate time for payment of the claim, because Plaintiffs are unable to show any genuine issue of material fact as to the FDIC's appointment as a receiver for WaMu.  Having failed to raise a genuine issue of material fact, Plaintiffs may not enjoy the benefit of the statutory exception to FIRREA's jurisdictional bar for failure to exhaust.

### Non-Statutory Excuses for Failure to Exhaust

Despite Plaintiffs' failure to meet the requirements of the statutory exception, Plaintiffs argue that this Court should excuse Plaintiffs' exhaustion obligation on the basis that the FDIC provided purportedly inconsistent rationales for disallowing Plaintiffs' claims or because Plaintiffs allegedly did not receive notice of the claims bar date.  Plaintiffs' arguments are not persuasive.[12]

---

[12]  This Court expresses no opinion with respect to whether judicial exceptions to the claims procedure can ever apply.  The estoppel theory Plaintiffs rely on here, while perhaps "warrant[ing] recognition," is not supported by the instant facts.  Cf. Rosa, 938 F.2d at 398 (observing that plaintiffs' theories for an exception are untenable, namely, that exhaustion is futile because the RTC could not deliver the type of relief requested, and the purposes of exhaustion are not met "when only legal issues are involved").

Plaintiffs imply that the FDIC's review of Plaintiffs' claim warrants additional scrutiny or that Plaintiff should be able to continue with this action because the FDIC seemingly contradicted its rationale for disallowing Plaintiffs' proof of claim.

The facts underlying Plaintiffs' contention are straightforward.  On September 18, 2009, Plaintiffs received a notice from the FDIC indicating that the claim was disallowed "[a]fter a thorough review of your filed claim along with your supporting documentation. . . ."  (Letter from the FDIC to Plaintiffs dated September 18, 2009 attached to Certification of Lessie Hill, Esq. dated October 7, 2009 ("September 18, 2009 Notice").)  The September 18, 2009 Notice explained that the reason for disallowance was that "[t]he claims presented are not proven to the satisfaction of the Receiver pursuant to **12 U.S.C. § 1821(d)(5)(D)**."  (Id. (emphasis added).) The September 18, 2009 Notice further stated that "you have the right to file a lawsuit on your claim or continue any lawsuit commenced before the appointment of the Receiver."[13]  (Id.)

Because section 1821(d)(5)(D) does not indicate that the disallowance will be final, it may be understood that under this provision Plaintiffs would have been able to pursue their claim in Court within sixty days of the FDIC's determination disallowing Plaintiffs' claim.  See 12 U.S.C. § 1821(d)(6)(A) (Provision for agency review or judicial determination of claims);

---

[13]  Section 1821(d)(5)(D) provides FIRREA's restriction on a claimant's ability to continue an action after the FDIC reviews a proof of claim and decides to disallow claimant's claim.  Section 1821(d)(5) reads in relevant part:

(D) Authority to disallow claims

(i) In general

The receiver may disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver.

16

12 U.S.C. § 1821(d)(6)(B) (Statute of limitations).

 In response to this notice, Plaintiffs submitted a certification arguing that the FDIC's

motion, seeking to prevent Plaintiffs from continuing this action on the basis of Plaintiffs' failure

to exhaust the claims procedure, fails for mootness because the FDIC's notice indicated that

Plaintiffs could continue their pre-receivership lawsuit.

Subsequently, on September 29, 2009, the FDIC sent Plaintiffs, in care of Plaintiffs'

counsel, a notice purporting "to clarify and further explain the reason why your claim was

disallowed by Notice dated September 18, 2009, and your rights and remedies regarding your

claim, if any."  (Supplemental Certification of Alison Galer, Esq. dated October 2, 2009 Ex. A

Letter from the FDIC to Plaintiffs dated September 29, 2009 ("September 29, 2009 Notice").)

The September 29, 2009 Notice further explained:

> The Receiver received, after the bar date, your Proof of Claim with your request that
> you be permitted to file late.  However, your submission does not prove to the
> Receiver's satisfaction that you did not have notice of the appointment of the
> Receiver in time to file your claim by the bar date, as required by statute.
> Accordingly, your claim is automatically DISALLOWED as untimely filed.  Such
> determination is final, and your failure to timely file a claim by the bar date precludes
> any further proceedings, rights or remedies on your claim.  **12 U.S.C.
> 1821(d)(5)(C)(i)**.

(Id. (emphasis added).)  Under Section 1821(d)(5)(C)(i), the FDIC's determination of

untimeliness is final.[14]

---

[14] Section 1821(d)(5)(C) provides as follows:

> (5) Procedures for determination of claims.
> (C) **Disallowance of claims filed after end of filing period.**
>
> (i) In general.  Except as provided in clause (ii), claims filed after the date
> specified in the notice published under paragraph (3)(B)(i) shall be disallowed and
> such disallowance **shall be final**.

Plaintiffs' counsel responded to the September 29, 2009 Notice, by certification, protesting that:

> It was **only after** we filed our certification with the court and attached a copy of the September 18, 2009 notice from the FDIC that the second notice dated September 29, 2009 was attached to [the FDIC's counsel's] certification.
>
> We would urge the court to rely upon the first notice that the plaintiffs received from the FDIC (dated September 18, 2009) and permit them to continue their lawsuit which was filed long before the appointment of a receiver.
>
> The FDIC's second notice dated September 29, 2009, is highly suspect and raises serious credibility issues. Specifically, given the timing and clear wording of the initial Notice of Disallowance of the claim.
>
> There is a significant question of fact as to the FDIC's review of the claims of the Plaintiffs and their reasons for denial of the claim. Under the circumstances, [the FDIC's] motion should be denied.

(Certification of Lessie Hill, Esq. dated October 7, 2009 ¶¶ 4-7 (emphasis in original).)

Unfortunately, for Plaintiffs, the failure to file a timely claim and therefore, exhaust the administrative claims review process is fatal to Plaintiffs' claims against WaMu, regardless of the reason for the FDIC's disallowance of the claim. Even if this Court makes all reasonable inferences in Plaintiffs' favor, the result is the same—Plaintiffs may not escape the strictures of FIRREA's jurisdictional bar.

A jurisdictional bar, precluding the continuance of an action in light of Plaintiffs' failure to comply with administrative remedies, may not be waived here. See Kolea, 866 F. Supp. 197. The Third Circuit in Rosa noted that it dealt with a statutorily created exhaustion requirement, not one designed by the courts. Id. at 395 ("We are thus mindful of our responsibility to apply this requirement 'with a regard for the particular administrative scheme at issue.'") (quoting

---

12 U.S.C. 1821(d)(5)(C)(i) (emphasis added).

18

Weinberger v. Salfi, 422 U.S. 749, 765 (1975)).

Even if this Court were empowered to apply a non-statutory exception excusing Plaintiffs from the failure to exhaust FIRREA's claims procedure, the estoppel theory, undergirding Plaintiffs' claim that the FDIC's motion is moot, fails to carry the day without a more substantial factual basis, such as affirmative misconduct or prejudice.  See e.g., City of New York v. F.D.I.C., 40 F. Supp. 2d 153 (S.D. N.Y. 1999) (statutory jurisdictional requirements not waived and the FDIC not precluded from enforcing them where claimant faced no prejudice as a result of the FDIC sending multiple notices with different bar dates to city and seeking documentation of claimant's claims during settlement discussions).

 Defective notice is an inadequate basis for excusing exhaustion.  Glover v. Washington Mut. Bank, F.A., No. 08-900, 2009 WL798832, at *3 (W.D. Pa. Mar. 20, 2009) ("[A] tardy mailing cannot relieve claimants' obligation to initially pursue their claim before the agency.") (citing Althouse v. RTC, 969 F.2d 1544, 1545 (3d Cir. 1992) ("The fact that the claimant did not receive mailed notice neither vests this Court with jurisdiction nor tolls the claims bar date . . . .") (internal quotation marks omitted) (explaining notice procedures).

The December 6, 2008 Notice indicates that the FDIC mailed the notice to Plaintiffs' attorney at the address indicated on Plaintiffs' proof of claim.  See Bueford 991 F.2d at 487 (citing Irwin v. Veterans Admin., 498 U.S. 89, 111 (1990) ("[I]t is entirely proper for the RTC to notify the claimant of the receivership via her attorney.").  The federal rules instruct that this is the better practice when a party to pending litigation is known to be represented.  Id.  (citing FED. R. CIV. P. 5(b)).

Further, other circuits have similarly found that the jurisdictional bar is not waived as a

19

result of the FDIC's failure to strictly comply with notice requirements.  See <u>Intercontinental Travel Marketing, Inc. v. F.D.I.C.</u>, 45 F.3d 1278 (9th Cir. 1994) (finding that 12 U.S.C.A. § 1821(d)(3)(C) does not toll claims bar date for claimant where the FDIC failed to mail notice of claims bar date to claimant); <u>Glenborough New Mexico Associates v. RTC</u>, 802 F. Supp. 387 (D.N.M. 1992).[15]

Based on the foregoing, this Court concludes that Plaintiffs' claimed lack of notice by mail cannot exempt Plaintiffs from their obligation to exhaust administrative remedies under FIRREA unless Plaintiffs can also demonstrate that they were not aware of the receivership. This Court concludes that there is no genuine dispute as to a material issue of fact with respect to Plaintiffs' alternative bases for relief, estoppel and defective notice.  Also, Plaintiffs have failed to satisfy the statutory exception.  This Court, as a matter of law, lacks subject matter jurisdiction over Plaintiffs' claims against the FDIC.

Plaintiffs have not presented a genuine dispute as to material issue of fact sufficient to defeat the FDIC's motion.  Plaintiffs' failure to timely comply with FIRREA's administrative claims process divests this Court of jurisdiction to entertain Plaintiffs' claims against the FDIC, as receiver for WaMu.

---

[15]  This Court need not go as far as some of the cases in other circuits to hold that despite the FDIC's abject failure to follow notice procedures of section 1821(d)(3)(C), the FDIC may, nevertheless, require a claimant's compliance with exhaustion requirements.  Cf. <u>Meliezer v. RTC</u>, 952 F.2d 879 (5th Cir. 1992).

**CONCLUSION**

The FDIC's motion for summary judgment (Docket Entry No. 20) is granted.[16]


Dated: December 29, 2009


                                        S/Joseph A. Greenaway, Jr.
                                        JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[16]  Because the FDIC, the jurisdiction-conferring party, is no longer a party, there is no basis, here, for continuing jurisdiction over Plaintiffs' state law claims against the remaining defendants.  This matter is remanded to state court.

21